# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN VINCENT BARTELL, JR., § § *Plaintiff*, § § *versus* § § CAROLYN W. COLVIN, § Acting Commissioner of § Social Security, § § *Defendant*. § | CIVIL ACTION NO. 5:13-843 |

## REPORT AND RECOMMENDATION

John Vincent Bartell, Jr. ("Bartell") seeks review of an adverse decision on his applications for disability-based benefits under the Social Security Act.

### I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Reviewing courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II. Background

On November 10, 2010, at the age of 23, Bartell applied for *child's* disability insurance benefits[1] and supplemental security income.[2] He claimed disability commencing as early as 1993 due to attention deficit hyperactivity disorder ("ADHD"), illiteracy, and adjustment disorder. (T. 34, 145, 147, 170).[3] After his claim was denied initially, the matter was assigned to administrative law judge, Marie Greener ("ALJ Greener"), who conducted an evidentiary hearing. (T. 46-63). Bartell, who was represented by legal counsel, attended and testified. (*Id*.).

ALJ Greener denied Bartell's applications in a written decision dated December 12, 2011. (T. 32-40). The Appeals Council denied Bartell's request for review (T. 2-7). Bartell then instituted this proceeding.

## III. Commissioner's Decision[4]

ALJ Greener determined that Bartell suffers from severe impairments consisting of illiteracy due to language deficiency and/or dyslexia.[5] (T. 34). These

---

[1] A disabled adult may receive child disability benefits "if . . . under a disability . . . at the time he attained the age of 18 or . . . prior to the time he attained (or would attain) the age of 22." 42 U.S.C. § 402(d)(1)(G); *see also* 20 C.F.R. § 404.350(a)(5).

[2] Supplemental Security Income benefits provide an additional resource to assure that disabled individuals' income does not fall below the poverty line. *See* ONLINE SOCIAL SECURITY HANDBOOK, available at http://www.socialsecurity.gov/policy/docs/ssb/v54n8/v54n8p2.pdf (last visited August 18, 2014).

[3] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 10).

[4] ALJ Greener utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). An adult's claim for disabled child benefits is evaluated under this same procedure. *See Richardson v.* Astrue, No. 2011 WL 2671557, at *7 (S.D.N.Y. July 8, 2011)(applying five-step procedure).

[5] In social security parlance, "illiteracy" means "inability to read or write." 20 C.F.R. § 404.1564(b)(1).

impairments limit Bartell to performing "simple repetitive work with no reading requirement," but not his ability to engage in work-related activities at any exertional level. (T. 35). Given this "residual functional capacity," and taking into account Bartell's age, education, and (lack of) prior work experience, ALJ Greener found that Bartell, despite his impairments, can perform work existing in the national economy. (T. 38). (In reaching this conclusion, ALJ Greener engaged in and relied upon a "framework analysis" under Medical–Vocational Rule 204.00.[6]) Accordingly, she concluded that Bartell "has not been under a disability," and his claim was denied. (T. 39).

## IV. Points of Alleged Error

Bartell's brief proffers three errors listed verbatim in the note below.[7] The first point challenges ALJ Greener's residual functional capacity finding. Principally, Bartell argues that ALJ Greener's residual functional capacity finding is at odds with her own earlier finding that Bartell has moderate difficulties in concentration, persistence, and pace, and also with a forensic medical source opinion (to which ALJ Greener expressly afforded "great weight")

---

[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[7] The proffered errors are:

1. The ALJ's residual functional capacity determination is unsupported by substantial evidence.

2. The ALJ's credibility finding is unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility; and,

3. The ALJ erred in mechanically applying the Medical-Vocational Guidelines, despite the existence of significant non-exertional impairments.

(Dkt. No. 12, p.1).

provided by a state agency medical consultant, Dr. R. Altmansberger, "Psychiatry."[8] (Dkt. No. 12, pp. 15-17).[9]

The Commissioner responds that ALJ Greener's residual functional capacity finding is sound and based on substantial evidence of record. (Dkt. No. 13, pp. 7-14). The Commissioner does not dispute that both ALJ Greener and Dr. Altmansberger found moderate mental limitations, but dismisses Bartell's arguments as unavailing because (a) ALJ Greener's "moderate" finding was made in the context of an earlier Step 3 determination, not her subsequent mental residual functional capacity assessment, and (b) Dr. Altmansberger concluded that Bartell is able to perform jobs involving simple tasks even though he has moderate mental limitations. (*Id*.).

### V. Governing Legal Principles

Weighing these competing arguments must be done in light of governing legal principles.

*A.   Residual Functional Capacity (Generally)*

Under sequential evaluation, administrative law judges assess claimants' "residual functional capacity" after they determine (in earlier steps) that claimants have severe impairments (Step 2) that do not meet or medically equal

---

[8]   R. Altmansberger's area of specialty is designated as "Psychiatry." (T. 285). Academic attainment is not indicated, but under the Commissioner's regulations and practices, the medical or psychological consultant signing a Psychiatric Review Technique Form must be either a psychologist or psychiatrist. *See* POMS DI 24505.025.F.4, Evaluation of Mental Impairments, *available at* http://policy.ssa.gov/poms.nsf/lnx/0424505025 (last visited August 18, 2014); *see also* 20 C.F.R. §§ 404.1520a(e)(1), 404.1615(c)(1) (disability determinations made by a medical or psychological consultant).

[9]   Bartell also challenges the residual functional capacity assessment on grounds that ALJ Greener failed to properly analyze an opinion expressed by a consultative examiner, Dr. Stephen F. Coleman, Psy.D. (Dkt. No. 12, pp. 12-14), and failed to assign specific weight to an opinion expressed by another consultative examiner, Dr. Jeanne A. Shapiro, Ph.D. (*Id*., pp. 14-15).

an impairment in the Commissioner's listings of presumptively disabling impairments (Step 3).[10] This term of art refers to what claimants can still do in a work setting despite their physical and/or mental limitations caused by their impairments and any related symptoms, such as pain. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

Through a formally-promulgated regulation and internal policy rulings, the Commissioner has established a detailed and elaborate analytical protocol for assessing residual functional capacity. *See* 20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c) (listing for comparative purposes various physical and mental abilities relevant for work activity on a regular and continuing basis); SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *5-6 (SSA July 2, 1996) (prescribing function-by-function assessment of a claimant's physical and mental capacities). The ultimate residual functional capacity assessment must reflect every impairment-related limitation of an individual's ability to meet basic mental and physical demands of work. Thus, "[a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment." SSR 85–15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK THE MEDICAL–VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *6 (SSA 1985). Similarly, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .." SSR 96-8p, 1996 WL 374184, at *1.

---

[10] The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

This residual functional capacity assessment is a necessary predicate finding for remaining sequential evaluation steps. Administrative law judges cannot reliably evaluate claimants' abilities to perform past relevant work (Step 4) or alternative available work (Step 5) except in the context of their residual functional capacity for work activities. Step 4 and Step 5 findings premised on incomplete, skewed or otherwise invalid residual functional capacity determinations are unsupported by substantial evidence. *See Plante v. Astrue*, No. 06–CV–0972 (LEK), 2009 WL 1951411, at *9 (N.D.N.Y. May 19, 2009) ("As the Court has already concluded that both the RFC and the hypothetical question were unsupported, the Court concludes that the ALJ's findings at step five of the sequential analysis are necessarily flawed.").

*B.    Mental Impairments*

Severity of mental impairments and their associated functional limitations are determined by application of a "special technique" established in 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis). This technique helps administrative law judges determine at Step 2 of sequential evaluation whether claimants have medically determinable mental impairments and whether such impairments are severe. It further aids Step 3 determinations of whether severe mental impairments meet or are equivalent in severity to any presumptively disabling mental disorder. (*See* note 10, *supra*).

Under this technique, functional effects are factored into Steps 2 and 3 findings, but these functional-limitation findings do not suffice as a subsequent mental residual functional capacity determination. An administrative law judge "cannot simply rely on the limitations articulated in the severity analysis at steps two and three of the sequential analysis, but must instead provide 'a more

This residual functional capacity assessment is a necessary predicate finding for remaining sequential evaluation steps. Administrative law judges cannot reliably evaluate claimants' abilities to perform past relevant work (Step 4) or alternative available work (Step 5) except in the context of their residual functional capacity for work activities. Step 4 and Step 5 findings premised on incomplete, skewed or otherwise invalid residual functional capacity determinations are unsupported by substantial evidence. *See Plante v. Astrue*, No. 06–CV–0972 (LEK), 2009 WL 1951411, at *9 (N.D.N.Y. May 19, 2009) ("As the Court has already concluded that both the RFC and the hypothetical question were unsupported, the Court concludes that the ALJ's findings at step five of the sequential analysis are necessarily flawed.").

*B.    Mental Impairments*

Severity of mental impairments and their associated functional limitations are determined by application of a "special technique" established in 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis). This technique helps administrative law judges determine at Step 2 of sequential evaluation whether claimants have medically determinable mental impairments and whether such impairments are severe. It further aids Step 3 determinations of whether severe mental impairments meet or are equivalent in severity to any presumptively disabling mental disorder. (*See* note 10, *supra*).

Under this technique, functional effects are factored into Steps 2 and 3 findings, but these functional-limitation findings do not suffice as a subsequent mental residual functional capacity determination. An administrative law judge "cannot simply rely on the limitations articulated in the severity analysis at steps two and three of the sequential analysis, but must instead provide 'a more

detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments.'" *Ladue v. Astrue*, No. 3:12–cv–600 (GLS), 2013 WL 421508, at *3 n.2 (N.D.N.Y. Feb. 1, 2013) (quoting SSR 96–8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996)).

SSR 96-8p mandates this "more detailed assessment." SSR 96–8p, 1996 WL 374184, at *4, 7. What is essential is evaluation of functional effects of mental impairments on work-related activities such as understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. *See id.*, at *6.

C.  *Findings*

When applying the "special technique" described earlier, ALJ Greener rated Bartell as having "moderate" difficulties with regard to "concentration, persistence, or pace. (T. 35). Similarly, in a Psychiatric Review Technique Form,[11] Dr. Altmansberger also assessed Bartell as having moderate difficulties in "maintaining concentration, persistence or pace." (T. 295). In a separate Mental Residual Functional Capacity Assessment,[12] Dr. Altmansberger (whose opinions ALJ Greener afforded great weight[13]) declared that Bartell retains mental capacity to do a job with simple tasks, but that he is moderately limited in understanding, remembering, and carrying out detailed instructions,

---

[11]   Form SSA-2506-BK,

[12]   Form SSA-4374-BK-SUP

[13]   ALJ Greener stated no reason for affording Dr. Altmansberger's opinions more weight than opinions of the two examining consultants other than that Dr. Altmansberger's opinions were consistent with her residual functional capacity assessment. (T. 38).

sustaining an ordinary routine without special supervision, interacting appropriately with the general public, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. (T. 277-78). In summary notes, Dr. Altmansberger further observed, *inter alia*, that Bartell "has difficulty consistently making appropriate decisions," and in "dealing with stress." (T. 279).

When articulating her residual functional capacity determination, ALJ Greener made no specific mention of any of these limitations. (*Id.*). Her complete residual functional capacity finding is:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a *full range of work at all exertional levels* but with the following nonexertional limitations: *simple repetitive work with no reading requirement.*

(*Id.*) (emphasis added).

### D. Critique

Having found that Bartell is illiterate with moderate limitations in concentration, persistence and pace, and having afforded great weight to forensic opinions of Dr. Altmansberger (who also found such limitations as well as several others mentioned above), it was incumbent on ALJ Greener to factor those limitations into her residual functional capacity finding. Bartell's *illiteracy* was accommodated by specifying that he cannot engage in jobs with reading requirements. But, unless her cryptic restriction to "simple repetitive work" suffices, ALJ Greener's residual functional capacity finding does not conform to and accommodate Bartell's limitations in *maintaining concentration, persistence and pace* (or to the additional undisputed mental limitations observed by Dr. Altmansberger (described above).

The Commissioner does not cite, and independent research fails to disclose judicial or other authoritative precedent supporting a conclusion that a residual functional capacity restriction to simple, repetitive work accommodates limitations in concentration, persistence or pace, sustaining an ordinary routine without special supervision, interacting appropriately with the general public, and responding appropriately to changes in the work setting. Nor has the Commissioner cited authoritative support for concluding that such a terse limitation adequately addresses a person's difficulty in consistently making appropriate decisions or dealing with workplace stress.

Rather, the Commissioner specifically counsels *against* such shortcut measures when dealing with mental impairments. In SSR 85–15, the Commissioner emphasizes the importance of thoroughness in evaluation on an individualized basis. *See* 1985 WL 56857, at *4-6. The Ruling elucidates that mentally impaired individuals' reactions to demands of work are highly individualized, and that in some cases, they have difficulty meeting requirements of even low stress jobs. *Id*. Accordingly, the Ruling directs that (a) administrative law judges make *particularized findings* about the nature of a claimant's stress, circumstances that trigger it, and how those factors affect ability to work, and (b) *every impairment-related limitation* created by an individual's response to demands of work be *reflected in the residual functional capacity assessment*. *See id*. And, particularly relevant here, the Ruling states that "[t]he decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work. This decision requires careful consideration of the assessment of RFC." *Id*., at *4.

The Commissioner's regulation sounds the same theme. It acknowledges the obvious, *viz.*, "a limited ability to carry out certain mental activities, such as

limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work." 20 C.F.R. §§ 404.1545(c), 416.945(c).

Clear weight of judicial authority similarly condemns shortcut assessments of mental residual capacity. Thus, when making residual functional capacity findings, administrative law judges may not avoid conducting the prescribed detailed assessment by merely indicating that claimants can perform simple, unskilled work *See Thompson v. Astrue*, No. 10–CV–6576 CJS, 2012 WL 2175781, at *14-15 (W.D.N.Y. May 30, 2012) (citing *Hudson v. Commissioner of Soc. Sec.*, Civil Action No. 5:10–CV–300, 2011 WL 5983342, at *9–10 (D. Vt. Nov. 2, 2011) (holding that administrative law judge erred when, in posing hypothetical to vocational expert when, merely indicated that the claimant could perform "routine and repetitive tasks with brief and superficial contact with the general public, coworkers, and supervisors" and did not indicate that claimant had specific limitations with regard to concentration, persistence or pace) (citing *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("The Commissioner asserts that the ALJ accounted for [the plaintiff's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public. We have rejected the very same contention before."))).[14]

---

[14] *See also Winschel v. Commissioner of Soc. Sec.*, 631 F.3d 1176, 1180–1181 (11th Cir. 2011) (limiting claimant to simple, routine tasks or to unskilled work would not, standing alone, typically suffice to account for a claimant's moderate limitations in concentration, persistence, or pace); *Lancellotta v. Secretary of Health & Human Servs.*, 806 F.2d 284, 285 (1st Cir. 1986) (remanding to the Commissioner for an assessment of Lancellota's vocational capabilities in light of his mental impairment where administrative law judge determined that Lancellota could perform low-stress jobs but made no findings regarding his ability to perform the basic work-related activities necessary for low-stress work); *Karabinas v. Colvin*, No. 6:12-CV-6578(MAT), 2014 WL 1600455, at *8 (W.D.N.Y. Apr. 21, 2014) (remanding for failure to make a "detailed assessment" regarding limitations in concentration, persistence, and pace).

ALJ Greener's residual functional capacity assessment is at odds with with her own findings of moderate mental limitations and with undisputed limitations found by the medical source whose opinions she gave great weight. This renders her mental residual functional capacity assessment infirm, and her critical Step 5 sequential evaluation finding (that Bartell is capable of performing work available in the national economy) is not supported by substantial evidence.

*E.     Effect of Error*

This error cannot be disregarded as harmless. It deprived Bartell of substantial rights to have his disability determination made according to correct legal principles and based on substantial evidence. The court cannot confidently conclude that Bartell's claim would have been decided the same way absent these errors. Specifically, a court cannot conclude that ALJ Greener inevitably would have made an identical residual functional capacity finding under a "more detailed assessment" factoring in all of Bartell's mental limitations, or that she could make the same Step 5 finding. A reviewing court cannot decide *de novo*, and cannot predict with certainty whether or how a proper Step 5 erosion-of-occupational-base "framework" analysis of Rule 204.00 of the Medical-Vocational Guidelines would generate an identical conclusion that Bartell's nonexertional limitations have "little or no effect on the occupational base of unskilled work."[15] (T. 39).

---

[15]    Medical-Vocational Guidelines (*See* 20 C.F.R. Pt. 404, Subpt. P, App. 2) are a matrix of general findings as to whether work exists in the national economy that a person can perform. Direct application of the guidelines to determine disability is inappropriate, however, when nonexertional impairments have more than a negligible impact on claimants' ability to perform a full range of work. *See Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). Even then, administrative law judges may consult and utilize them as a "framework" for evaluating disability. Framework analysis involves (a) using the guidelines with respect to a claimant's exertional limitations, and then (b) determining how much nonexertional limitations and environmental restrictions further erode that individual's occupational base.

In absence of ability to conclude affirmatively that Bartell's application would have been decided the same way had the legal error in assessing his mental residual capacity not occurred, a reviewing court must conclude that the error was harmful, and that reversal and remand are appropriate.

## VI. Remaining Points of Error

Since remand is necessary based on the error discussed above, it is unnecessary to address Bartell's remaining points relating to ALJ Greener's credibility assessment of his subjective testimony and her "framework" application of the grids without aid of expert vocational testimony. Although these points are not examined here, the Commissioner should consider them when making a new determination.

## VII. Recommendation

The Commissioner's decision should be REVERSED, and the case should be REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings in accordance with this recommendation.

## VIII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d

566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the   19   day of   August   2014.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge