**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JOHN VINCENT BARTELL, JR.,**

                    **Plaintiff,**                    **5:13-cv-843**
                                                      **(GLS/ESH)**

          **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                    **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                             HOWARD D. OLINSKY, ESQ.
300 S. State Street
Suite 420
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                      SIXTINA FERNANDEZ
United States Attorney                         Special Assistant U.S. Attorney
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**


<u>**MEMORANDUM-DECISION AND ORDER**</u>

# I. **Introduction**

Plaintiff John Vincent Bartell, Jr. challenges defendant Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) In a Report and Recommendation (R&R) filed August 20, 2014, Magistrate Judge Earl S. Hines recommended that the Commissioner's decision be reversed. (Dkt. No. 15.) No party has filed objections to the R&R. For the reasons stated below, the court declines to adopt the R&R, and affirms the Commissioner's decision.

# II. **Background**[1]

On November 10, 2010, at the age of twenty-three, Bartell filed an application for SSI under the Social Security Act. (Tr.[2] at 65, 149-54.)[3] After his application was denied, Bartell requested a hearing before an Administrative Law Judge (ALJ), which was held on November 10, 2011. (*Id.* at 72-93, 46-63.) On December 12, 2011, the ALJ issued a decision

---

[1] The court incorporates the factual recitations of the parties and Judge Hines. (*See generally* Dkt. Nos. 12, 13, 15.)

[2] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

[3] Bartell also filed an application for Child's Insurance Benefits on November 10, 2010, but in his complaint, he only appeals the ALJ's decision denying SSI. (*See* generally Compl.; Tr. at 64, 145-48.)

denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 2-7, 29-43.)

Bartell commenced the present action by filing a complaint on July 17, 2013, seeking judicial review of the Commissioner's determination. (Compl.) After receiving the parties' briefs, Judge Hines issued an R&R recommending that the Commissioner's decision be reversed and remanded. (*See generally* Dkt. No. 15.)

### III. <u>Standard of Review</u>

By statute and rule, district courts are authorized to refer social security appeals to magistrate judges for proposed findings and recommendations as to disposition. *See* 28 U.S.C. § 636(b)(1)(A), (B); N.D.N.Y. L.R. 40.1, 72.3(d); General Order No. 18. Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In cases where no party has filed an

objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error.  *See id.* at *4-5.

## IV.  Discussion

### A.     Residual Functional Capacity Determination

Bartell first alleges that the ALJ's residual functional capacity (RFC)[4] determination is unsupported by substantial evidence.[5]  According to Bartell, the ALJ failed to: (1) properly analyze the opinion of consultative examiner Stephen Coleman; (2) weigh the opinion of consultative examiner Jeanne Shapiro; and (3) reconcile her RFC findings with the opinion of nonexamining medical consultant R. Altmansberger and the ALJ's own determination that Bartell suffers moderate difficulties in the area of concentration, persistence, or pace.  (Dkt. No. 12 at 11-17.)  In the R&R,

---

[4] A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 416.945(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 486 (2d. Cir. 2012).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

[5] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citation omitted).

Magistrate Judge Hines found that the ALJ's RFC finding does not conform to and accommodate Bartell's limitations in maintaining concentration, persistence, and pace. (Dkt. No. 15 at 8-12.) For that reason, Judge Hines recommends reversal and remand. (*Id.* at 12.)

An ALJ's evaluation of a claimant's mental impairments must reflect her application of the "special technique" set out in 20 C.F.R. § 416.920a, which necessitates consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)). If the claimant's mental impairment is deemed severe, the ALJ must determine whether the impairment meets or equals the severity of a mental disorder listed in section 12.00 of the Listing of Impairments in 20 C.F.R. part 404, subpart P, appendix 1. *See* 20 C.F.R.

§ 416.920a(d)(2).  The mental RFC assessment used at steps four and five
of the sequential evaluation process requires the ALJ to, among other
things, engage in a more detailed assessment of various functions
contained in the broad categories found in paragraphs B and C of the adult
mental disorders listings in section 12.00 of the Listing of Impairments.
*See* SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996).

Here, in proceeding through the five-step sequential analysis, the ALJ
made the following pertinent findings.  At step two, she determined that
Bartell suffers from illiteracy due to language deficiency and/or dyslexia,
which is a severe impairment under the regulations.  (Tr. at 34.)  At step
three, she concluded that Bartell's mental impairment does not meet or
medically equal the severity of a listed impairment.  (*Id.* at 35.)  Specifically,
the ALJ determined that Bartell has experienced mild restrictions in
activities of daily living, mild difficulties in social functioning, moderate
difficulties in concentration, persistence or pace, and no episodes of
decompensation.  (*Id.*)  Next, the ALJ found that Bartell retains the RFC to
perform a full range of work at all exertional levels, but is limited to simple,
repetitive work with no reading requirement.  (*Id.*)

In making her findings, the ALJ relied on the opinion of consultative

examiner Shapiro that Bartell is capable of understanding and following simple instructions and directions if he does not have to read anything to do so. (*Id.* at 274.) Further, Dr. Shapiro opined that Bartell can perform simple tasks with supervision and "perhaps" independently, maintain attention and concentration, attend a routine and maintain a schedule, and relate to and interact moderately well with others. (*Id.*) However, Dr. Shapiro opined that Bartell has difficulty learning new tasks, consistently making appropriate decisions, and dealing with stress. (*Id.*) The ALJ discussed the examination findings and conclusions of Dr. Shapiro, but did not assign her opinion a specific weight. (*Id.* at 38.) On the other hand, the ALJ assigned "great weight" to the opinion of nonexamining consultant Altmansberger. (*Id.*) Dr. Altmansberger completed a psychiatric review technique form and concluded that Bartell suffers moderate difficulties in the area of maintaining concentration, persistence, or pace. (*Id.* at 295.) Dr. Altmansberger also completed a mental RFC assessment and opined that Bartell was moderately limited in his ability to understand, remember, and carry out detailed instructions, sustain an ordinary routine without special supervision, interact appropriately with the general public, and respond appropriately to changes in the work setting. (*Id.* at 277-79.) Dr.

Altmansberger ultimately concluded that Bartell "retains the mental capacity to do a job with simple tasks." (*Id.* at 279.)

Judge Hines found that the ALJ's "terse" RFC determination failed to account for the "moderate limitations" in concentration, persistence, and pace that the ALJ determined Bartell suffers at step three, as well as the limitations found by Dr. Altmansberger, whose opinion the ALJ gave great weight. (Dkt. No. 15 at 8-11.) Indeed, Judge Hines cited numerous circuit court and district court decisions holding that ALJs may not avoid conducting a detailed function by function assessment by merely indicating that claimants can perform simple, unskilled work. (*Id.* at 10.) The Second Circuit has not directly addressed the issue of whether a limitation to simple unskilled work adequately accounts for moderate limitations in concentration, persistence, and pace. The Court has held, however, that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand. *See Chichocki v. Astrue*, 729 F.3d 172, 174 (2d Cir. 2013). Further, various courts have held that when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a claimant to

8

only unskilled work sufficiently accounts for such limitations.[6]  *See Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-76 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); *McIntyre v. Colvin*, No. 3:12-CV-0318, 2013 WL 2237828, at *4 (N.D.N.Y. May 21, 2013); *see also Rodriguez v. Colvin*, No. 13-CV-6360, 2014 WL 3882191, at *17 (W.D.N.Y. Aug. 6, 2014) (finding that where the ALJ determined that a claimant "has a certain amount of difficulty with concentration, persistence or pace, consisting of some difficulty remembering what someone tells him to do and some difficulty focusing on tasks," the ALJ accounted for those limitations by limiting the claimant to work requiring simple instructions and directions (internal quotation marks and citations omitted)); *Woodmancy v. Colvin*, No. 5:12-cv-991, 2013 WL 5567553, at *4 (N.D.N.Y. Oct. 9, 2013) (holding that the ALJ did not err when she failed to make specific accommodations for a claimant's impaired ability to cope with work stress, because the ALJ relied

---

[6] The mental activities generally required by competitive, remunerative, unskilled work are: understanding, remembering, and carrying out simple instructions; making simple work-related decisions, responding appropriately to supervision co-workers and usual work situations, and dealing with changes in a routine work setting.  *See* SSR 96-9p, 61 Fed. Reg. 34,478, 34,483 (July 2, 1996).  Further, "[b]asic communication is all that is needed to do unskilled work.  The ability to hear and understand simple oral instructions or to communicate simple information is sufficient."  *Id.*  In addition, unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people."  SSR 85-15, 1985 WL 56857, at *4 (1985).

on the opinion of a medical expert, who opined that the claimant could still perform basic work tasks despite his difficulty handling stressors).

Here, although the ALJ did not conduct a function-by-function analysis of Bartell's mental capabilities, she extensively considered the findings and opinions of the consultative examining and nonexamining physicians with respect to Bartell's mental capabilities and work-related functions and limitations. (Tr. at 36-38.) The ALJ noted that, on examination by Dr. Shapiro, Bartell reported that his sleep and appetite were normal, and he did not report any significant manic or anxiety related symptoms. (*Id.* at 38, 271-72.) Further, Bartell was cooperative with adequate social skills, appropriate eye contact, normal motor behavior, fluent speech, and coherent and goal directed thought processes. (*Id.* at 272-73.) Bartell's mood was clam, he had a full affect, and his attention and concentration as well as recent and remote memory were intact. (*Id.* at 273.) Dr. Shapiro estimated that Bartell's intellectual functioning was in the deficient range with a somewhat limited general fund of knowledge, and his insight and judgment were fair. (*Id.*) Bartell reported to Dr. Shapiro that he was able to care for his personal hygiene, prepare simple meals, and socialize with family and friends. (*Id.*) After reviewing Dr. Shapiro's mental

status examination findings and opinion, Dr. Altmansberger opined that Bartell was able to understand, remember, and carry out simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, work in coordination or proximity with others, make simple work related decisions, complete a normal workday and workweek and perform at a consistent pace, get along with coworkers or peers, and accept instructions and criticism from supervisors. (*Id.* at 277-28.) In the narrative portion of Dr. Altmansberger's RFC assessment, he concluded that Bartell maintains the mental capacity to do a job with simple tasks. (*Id.* at 279.) In addition to the above cited medical evidence, the ALJ considered Bartell's testimony that he attempted to work as a landscaper and quit that job due to a dispute with his supervisor over the amount of work he was required to perform and his compensation, but not because he was unable to perform the basic activities of work. (*Id.* at 36, 52-53.) The ALJ also noted that Bartell was not on any medications or receiving any mental health treatment and his educational records revealed average to slightly below average cognitive functioning. (*Id.* at 36.)

After reviewing the record evidence, the court concludes that the

ALJ's RFC assessment is consistent with her determination that Bartell had moderate difficulties in the area of concentration, persistence, and pace, as well as the opinion of Dr. Altmansberger, which indicates that, despite Bartell's limitations, he can still perform the basic activities of unskilled work. *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (concluding that an RFC determination limiting a claimant to simple, routine, repetitive tasks and not production rate or pace work was consistent with the ALJ's assessment that claimant had moderate difficulties with concentration, persistence, or pace due to attention deficit hyperactivity disorder (ADHD), difficulties reading, short term memory problems, and difficulties handling stress). Further, because the ALJ's RFC assessment provides an adequate basis for meaningful review, applies the correct legal standards, and is supported by substantial evidence, remand is not required due to her failure to engage in a function-by-function review. *See Chichocki*, 729 F.3d at 174. As the court has identified clear error, the court rejects the R&R and will consider Bartell's remaining contentions.

Turning to the opinion of Dr. Shapiro, although the ALJ did not explicitly state the weight given to it, the ALJ clearly considered the opinion

and relied on it in forming her RFC determination.  (Dkt. No. 12 at 14-15;

Tr. at 38.)  Further, although the ALJ erroneously noted inconsistencies

between Dr. Coleman's Psychological Evaluation Report and the Medical

Source Statement he completed, the inconsistencies the ALJ pointed out

exist between Dr. Shapiro's January 2011 report and Dr. Coleman's

October 2011 Medical Source Statement.  (Dkt. No. 12 at 13-14; Tr. at 37.)

In particular, Bartell reported to Dr. Shapiro that his sleep and appetite

were normal, and denied experiencing any symptoms of anxiety.  (Tr. at

371-72.)  However, on his Medical Source Statement, Dr. Coleman

identified appetite and sleep disturbance as among Bartell's symptoms and

diagnosed Bartell with adjustment disorder with mixed anxiety and

depression.  (*Id.* at 311.)  Additionally, Dr. Coleman opined that Bartell was

seriously limited in his ability to maintain attention, but his examination

revealed fair to average short term memory skills, and Bartell's attention,

concentration, and memory were intact on Dr. Shapiro's examination.  (*Id.*

at 273, 307, 312.)  Further, as the ALJ noted, both Drs. Shapiro and

Coleman recommended Bartell seek vocational training, and Dr. Coleman

suggested that his opinion with respect to Bartell's inability to work was

partially attributable to Bartell's lack of work history.  (*Id.* at 37-38, 274,

301-10.)  However, according to Dr. Coleman, Bartell's lack of work history is due in part to Bartell's mistaken belief that all work demands the ability to read.  (*Id.* at 309.)

Ultimately, it is for the ALJ to resolve evidentiary conflicts, and "an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *see Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  Additionally, "whether there is substantial evidence supporting the [claimant]'s view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*"  *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013).  Based on the foregoing, as the ALJ properly relied on substantial evidence in the record to assess Bartell's mental condition pursuant to the "special technique" set out in 20 C.F.R. § 416.920a, her determination is legally sound and supported by substantial evidence.

**B.     Credibility Determination**

Bartell next contends that the ALJ failed to analyze the required factors when assessing his credibility.  (Dkt. No. 12 at 17-19.)  Bartell points to evidence that he asserts supports his allegations, and claims that

the ALJ improperly compared his statements to the ALJ's own RFC finding, as opposed to the evidence of record.  (*Id.*)  The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R.

§ 416.929(c)(3)(i)-(vi)).

In this case, the ALJ determined that Bartell's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible to the extent they were inconsistent with the ALJ's RFC assessment. (Tr. at 36.) In making this determination, the ALJ considered the objective medical evidence, opinion evidence, Bartell's treatment, including medication, and Bartell's reported daily activities. (*Id.* at 36-38.) The ALJ noted that, on a psychological evaluation conducted when Bartell was in fifth grade, an ADHD rating scale was completed by Bartell's teachers and resulted in scores that were not significant in any area. (*Id.* at 36.) The ALJ also considered Bartell's testimony with respect to his attempt to work as a landscaper. (*Id.*)

Bartell argues that the ALJ failed to consider that his teachers indicated that distractibility was still an issue and that Bartell had a diagnosis of ADHD. (Dkt. No. 12 at 18.) Initially, it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citation

omitted).  Moreover, the ALJ noted that the psychological evaluation indicated that Bartell had been earlier diagnosed with ADHD.  (Tr. at 36.) Bartell also contends that his "landscaping work was not really a job," the ALJ failed to address the fact that Bartell's employer attempted "to take advantage of him by not paying him the right amount," and his short duration in landscaping is consistent with his complaints of difficulty with concentration and focus.  (Dkt. No. 12 at 18.)  Contrary to Bartell's contentions, the ALJ's conclusion that his testimony regarding his effort to work was inconsistent with his allegations of disabling mental impairments was reasonable.  *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal quotation marks and citation omitted)).  Bartell indicated that he left this employment due to a dispute over his wages, and not due to any inabilities in the area of concentration, persistence, or pace.  (Tr. at 52-53.)

Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 416.929(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the

reasons for the ALJ's determination of credibility are sufficiently specific to conclude that she considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))). Further, it is clear from the ALJ's detailed credibility analysis that her reference to consistency with the RFC assessment was merely an indication that the RFC assessment incorporated those findings. (Tr. at 36-38.) Ultimately, because her reasoning for doing so is "set forth . . . with sufficient specificity . . . [and] is supported by substantial evidence," the ALJ's credibility assessment is conclusive. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

## C.    <u>Vocational Expert</u>

Finally, Bartell argues that the ALJ erred in applying the Medical-Vocational Guidelines, despite the existence of significant nonexertional

impairments.  (Dkt. No. 12 at 19-20.)  In making her ultimate disability determination, an ALJ may rely on the Medical-Vocational Guidelines, referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines.  *See* 20 C.F.R. § 416.969; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009).  However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by h[er] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).  In that case, the ALJ should consult with a vocational expert (VE) before making a determination as to disability. *See id.*

As discussed above, the ALJ's RFC determination that Bartell can perform a full range of work at all exertional levels, but is limited to simple, repetitive work with no reading requirement is supported by substantial evidence.  *See supra* Part VI.A.  Notably,

[w]hile illiteracy or the inability to communicate in

19

English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age [eighteen to forty-four] even if they are illiterate or unable to communicate in English.

20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(i). Accordingly, the ALJ did not err in concluding that Bartell's nonexertional limitations have little or no effect on the occupational base of unskilled work at all exertional levels. (Tr. at 39.) That finding obviated the need to consult with a VE. *See Bapp*, 802 F.2d at 605.

**D.    Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

**V. Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Earl S. Hines' August 20, 2014

Report and Recommendation (Dkt. No. 15) is **REJECTED**; and it is further

   **ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Bartell's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

   **ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court